UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:13-CV-00054-LLK

YVONNE VIED          PLAINTIFF

v.

CAROLYN COLVIN          DEFENDANT
    Commissioner of Social Security

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon the Plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. The Plaintiff is represented by Donna Thornton-Green. The fact and law summaries of the Plaintiff and the Defendant are at Docket Entry No. (DN) 10 and DN 11, respectively.

Administrative Law Judge (ALJ) Michael Comisky rendered the final decision of the Commissioner denying Plaintiff's disability claim, which is presently before the Court upon judicial review. Administrative Record (AR), pp. 20-30.

For the reasons below, the final decision of the Commissioner is AFFIRMED, and the Plaintiff's complaint is DISMISSED.

**Procedural History**

The ALJ found that Plaintiff has no exertional limitation (AR, p. 24), and she does not challenge this aspect of the ALJ's decision (DN 10, p. 2). Plaintiff claims that the ALJ improperly evaluated her mental impairments.

Psychiatrist Vicki Roberts treated Plaintiff from August through November, 2009. Dr. Roberts suspected that Plaintiff dropped out of therapy due to "financial concerns"; therapy was "very, very

1

incomplete" (AR, p. 240). Dr. Roberts did not offer an opinion of what Plaintiff can still do despite her impairments. However, on one occasion, she did assign a global assessment of functioning (GAF) of 51 (AR, p. 252).

Plaintiff received treatment at Four Rivers Behavioral Health from November through December, 2011. Treating sources at Four Rivers assigned a GAF of 53 on two occasions (AR, pp. 348 and 356).

In November 2010, Jeanne Bennett, Psy.D., examined Plaintiff at the request of the Commissioner. Dr. Bennett assigned a current GAF of 50 and completed a mental Functional Capacities summary (AR, pp. 258-259).

In January 2011, in light of Dr. Bennett's findings and the record as a whole, state agency program psychologist Douglas Robbins, Ph.D., completed the Mental Residual Functional Capacity Assessment (AR, pp. 72-74).

In March 2011, another program psychologist, Edward Stodola, Ph.D., adopted Dr. Robbins' findings, stating that there was no additional evidence to materially alter the prior findings (AR, p. 87).

At the administrative hearing, the ALJ explained that the first vocational hypothetical would be "based on my interpretation of [Dr. Bennett's Functional Capacities summary]" (AR, pp. 55 and 259). The ALJ asked vocational expert (VE) Lowell Latto, Ph.D., to assume that the individual is limited to "simple instructions, simple repetitive tasks, low stress. I define that as non-paced work with only occasional contact with coworkers, supervisors, and no public contact" (AR, p. 55). The VE testified that the individual could perform Plaintiff's past relevant work as a housekeeper as well as other jobs that exist in significant numbers in the national economy (AR, pp. 55-56).

The ALJ denied Plaintiff's disability claim based upon acceptance of the foregoing vocational testimony. In support of her mental residual functional capacity (RFC) finding, the ALJ stated that she was "fully persuaded by the opinions of Dr. Robbins and Dr. Stodola, which are adopted herein. Their

opinions are consistent with and supported by the evidence as a whole and are not contradicted by any treating source opinion [i.e., Dr. Roberts' opinion] or 'other' credible evidence" (AR, p. 29). In referring to "other credible evidence," the ALJ was implicitly referencing Dr. Bennett's findings, which she found to be credible only to the extent contemplated by the controlling vocational hypothetical.

At the hearing, counsel apparently was going to present a hypothetical to the VE based upon the GAF ratings in the record and mentioned above in the 50 to 53 range. However, before asking the question, counsel and the ALJ digressed into a colloquy regarding the relevance of GAF scores for Social Security disability purposes. The ALJ took the position that GAF scores are not particularly useful as they typically reflect only a claimant's current GAF, whereas disabling limitations must endure for at least 12 continuous months, GAF scores are inherently subjective, with different evaluators validly assigning difference scores on the same occasion (AR, pp. 58-60). Counsel did not ask the VE any hypothetical based upon a GAF score.

In his written decision, the ALJ reiterated his position of generally discounting GAF scores (AR, p. 28).

**Discussion**

Plaintiff presents four contentions: 1) The ALJ erred in discounting the GAF scores. 2) The controlling vocational hypothetical, while purporting to be based on the limitations assigned by Dr. Bennett, in fact, did not fairly and accurately state and incorporate those restrictions. 3) In discounting Dr. Bennett's actual findings, the ALJ "puts himself in the role of a medical doctor"; the ALJ should have called upon a medical expert (DN 10, p. 5). 4) The ALJ erred in accepting the findings of the non-examining sources, Drs. Robbins and Stodola, in preference to the actual findings of the one-time examining source, Dr. Bennett.

3

First Argument

The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM–IV–TR)* at pp. 32 and 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning [and] may be particularly useful in tracking the clinical progress of individuals in global terms." *Id.* at 32. The GAF scale ranges from 100 (superior functioning) to 1 (unable to function). *Id.* at 34.

The GAF scores in this case are in the 50 to 53 range, which lies on the cusp of "moderate" and "serious" symptoms:

> 60-51: Moderate difficulty in social, occupation, or school functioning (e.g. few friends, conflicts with peers or co-workers).
>
> 50-41: Serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job).
>
> (AR, p. 252).

While Plaintiff attempts to rely on the GAF scores in support of her mental disability claim, the Sixth Circuit has rejected the proposition that a determination of disability can be based on the subjective determination of a GAF score. GAF is a clinician's subjective rating of an individual's overall psychological functioning. *Kennedy v. Astrue*, 247 Fed.Appx. 761, 2007 WL 2669153 at *5 (6th Cir.). A GAF score may help an ALJ assess mental RFC, but it is not raw medical data; rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning. *Id.* In short, there is no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky v. Commissioner*, 167 Fed.Appx. 496, 2006 WL 305648 at *14 (6th Cir.).

The ALJ's discounting of the GAF scores is consistent with Sixth Circuit precedents.

Second Argument

"Hypothetical questions ... need only incorporate those limitations which the ALJ has accepted as credible." *Parks v. Commissioner*, 413 Fed.Appx. 856, 2011 WL 867214 at *9 (6th Cir.) citing *Casey v. Secretary*, 987 F.2d 1230, 1235 (6th Cir.1993). Additionally, the regulations make clear that a claimant's RFC is an issue "reserved to the Commissioner" and that the ALJ assesses a claimant's RFC "based on all of the relevant medical and other evidence" of record. 20 C.F.R. §§ 404.1527(d)(2) and 404.1545(a)(3).

It is legally irrelevant whether the controlling vocational hypothetical, which the ALJ indicated would be based upon the limitations assigned by Dr. Bennett, did, in fact, fairly and accurately state and incorporate those restrictions as it lay within the ALJ's province to determine which limitations he would accept as credible and which he would reject.

**Third Argument**

"[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Commissioner*, 342 Fed.Appx. 149, 2009 WL 2514058 at *7 (6th Cir.). By logical extension, an ALJ does not improperly assume the role of a medical expert in presenting a vocational hypothetical based upon the limitations he finds to be credible.

**Fourth Argument**

While Plaintiff argues that the ALJ erred in accepting the findings of the non-examining sources, Drs. Robbins and Stodola, in preference to the findings of the one-time examining source, Dr. Bennett, the ALJ did not acknowledge any significant difference among these opinions. The ALJ characterized Dr. Bennett's opinion as compatible with performance of "a wide variety of low-stress/low pressure types of jobs with limited interaction with others" (AR, p. 28).

The Court declines to opine as to whether the ALJ fairly characterized Dr. Bennett's narrative report. For purposes of substantial-evidence review, it suffices to observe that the report is compatible

with the completion of the standard mental assessment forms by the non-examining sources. The non-examining sources specifically took Dr. Bennett's report into account when they completed the forms, and the ALJ was "fully persuaded" (AR, p. 29) by the non-examining source opinions.

**Order**

For the foregoing reasons, the final decision of the Commissioner is AFFIRMED, and the Plaintiff's complaint is DISMISSED.